**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

| | |
|---|---|
| K.E., an individual,<br><br>Plaintiff,<br><br>v.<br><br>G6 HOSPITALITY, LLC;<br>G6 HOSPITALITY IP, LLC;<br>G6 HOSPITALITY PROPERTY, LLC;<br>G6 HOSPITALITY PURCHASING, LLC;<br>G6 HOSPITALITY FRANCHISING, LLC;<br>MOTEL 6 OPERATING, L.P.; and<br>KS HOSPITALITY INC<br>d/b/a MOTEL 6 FRESNO – YOSEMITE HWY,<br><br>Defendants. | Civil Action No.: _______________<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff K.E., by and through the undersigned counsel, and respectfully submits her Complaint for damages and makes the following averments.

**INTRODUCTION**

1. This is a civil action for damages brought pursuant to the Federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"). See 18 U.S.C. § 1595.

2. Plaintiff meets the definition of a sex trafficking victim as she was caused, as a minor under the age of eighteen, to engage in commercial sex acts at the Motel 6 Fresno – Yosemite Hwy located at 6730 N. Blackstone Avenue, Fresno, California 93710 (the "Subject Hotel"), from in or about January 2024 through in or about June 2024, during which entire period Plaintiff was seventeen years old.

3. Defendants G6 Hospitality, LLC, G6 Hospitality IP, LLC, G6 Hospitality Property, LLC, G6 Hospitality Purchasing, LLC, G6 Hospitality Franchising, LLC, and Motel 6 Operating, L.P. (collectively, the "G6 Defendants") are the franchisors of the Motel 6 brand. Upon information and belief, they owned, operated or co-operated, controlled, and/or managed the Motel 6 brand and the system through which the Subject Hotel operated throughout the period during which Plaintiff was trafficked.

4. Defendant KS Hospitality Inc (the "Franchisee Defendant") is, upon information and belief, the franchisee of the Subject Hotel. Upon information and belief, the Franchisee Defendant owned, operated, or co-operated, controlled, and/or managed the Subject Hotel through the G6 system throughout the period during which Plaintiff was trafficked, and has owned the real property on which the Subject Hotel is situated since in or about August 2017.

5. Section 1591 of the TVPRA criminalizes the sex trafficking of children. Where the person caused to engage in a commercial sex act is under the age of eighteen, no showing of force, fraud, or coercion is required. See 18 U.S.C. § 1591(a). Moreover, under § 1591(c), where a defendant had a reasonable opportunity to observe the minor victim, knowledge or reckless disregard of the victim's age need not be proven. Separately, § 1595 of the TVPRA provides victims of sex trafficking with a civil remedy against the traffickers or the beneficiaries of the sex trafficking crime. See 18 U.S.C. § 1595(a). More specifically, § 1595 provides for three distinct causes of action: (1) a claim against the trafficker who directly violated § 1591(a)(1); (2) a beneficiary claim against the trafficker who directly violated § 1591(a)(2); and (3) a beneficiary claim against a civil defendant benefiting from and receiving anything of value from participation in a venture which that person knew or should have known was engaged in sex trafficking. The subject lawsuit is applicable, in part, to prong three.

## PARTIES

6. Due to the sensitive, private, and potentially retaliatory nature of the allegations herein, and because Plaintiff was a minor victim of sex trafficking, Plaintiff proceeds by her initials to protect her privacy and identity. Nationwide similarly situated Plaintiffs have proceeded by pseudonym or by their initials due to the foregoing.

7. Plaintiff K.E. is a resident of California. Plaintiff was born in 2006 and was seventeen years old at all times during which she was trafficked at the Subject Hotel.

8. Defendant G6 Hospitality, LLC is a for-profit Delaware limited liability company with its principal place of business in Carrollton, Texas.

9. Defendant G6 Hospitality IP, LLC is a for-profit Delaware limited liability company with its principal place of business in Carrollton, Texas.

10. Defendant G6 Hospitality Property, LLC is a for-profit Delaware limited liability company with its principal place of business in Carrollton, Texas.

11. Defendant G6 Hospitality Purchasing, LLC is a for-profit Delaware limited liability company with its principal place of business in Carrollton, Texas.

12. Defendant G6 Hospitality Franchising, LLC is a for-profit Delaware limited liability company with its principal place of business in Carrollton, Texas.

13. Defendant Motel 6 Operating, L.P. is a for-profit Delaware limited partnership with its principal place of business in Carrollton, Texas.

14. Defendant KS Hospitality Inc, upon information and belief doing business as Motel 6 Fresno – Yosemite Hwy, is a for-profit California corporation with its principal place of business located at 6730 N. Blackstone Avenue, Fresno, California 93710. Upon information and belief, said Defendant owned, operated, controlled, and/or managed the Subject Hotel through the G6 system

during the period in which Plaintiff was trafficked, and has owned the real property on which the Subject Hotel is situated since acquiring it in or about August 2017.

## JURISDICTION AND VENUE

15. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves federal questions under the TVPRA.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim — including the franchising and/or operational venture between the Franchisee Defendant and the G6 Defendants pursuant to which the Subject Hotel was operated, branded, and controlled — occurred, in substantial part, in Texas and in the Eastern District of Texas.

17. G6 Hospitality, LLC, G6 Hospitality IP, LLC, G6 Hospitality Property, LLC, G6 Hospitality Purchasing, LLC, G6 Hospitality Franchising, LLC, and Motel 6 Operating, L.P. have the same principal place of business, which is in Carrollton, Texas, within the Eastern District of Texas. Each of the G6 Defendants is therefore a resident of the Eastern District of Texas.

18. Venue is also proper as to the G6 Defendants pursuant to 28 U.S.C. § 1391(b)(1) because each of the G6 Defendants maintains their principal place of business in the Eastern District of Texas.

19. The franchising venture pursuant to which the Franchisee Defendant operated the subject motel occurred, in substantial part, in Texas because:

(a) upon information and belief, the Franchisee Defendant actively sought out a franchising relationship by contacting the G6 Defendants in Texas;

(b) on information and belief, the Franchisee Defendant acknowledged that the negotiation, execution, and acceptance of the franchising agreements occurred in the Eastern District of Texas;

(c) on information and belief, the Franchisee Defendant agreed that its ongoing performance of the franchising agreement would take place, in part, in the Eastern District of Texas;

(d) on information and belief, the franchising agreements had a choice of law provision selecting the law of Texas as the governing law;

(e) on information and belief, the franchising agreements required the Franchisee Defendant to report information to the G6 Defendants in Texas, including information about all incidents involving safety, security, public relations, or serious injuries to persons or property that occur at, or involve, the subject motels, including those involving sex trafficking victims like Plaintiff;

(f) on information and belief, the Franchisee Defendant agreed to submit all notices required under the franchising agreement to the G6 Defendants in the Eastern District of Texas;

(g) on information and belief, the Franchisee Defendant was required to attend training and meetings in Texas;

(h) the G6 Defendants dictated policies related to safety, security, human trafficking, and hotel operations at the subject motels from their principal place of business in the Eastern District of Texas;

(i) on information and belief, the Franchisee Defendant had an ongoing obligation to participate in centralized programs operated by the G6 Defendants from their principal place of business in the Eastern District of Texas;

(j) on information and belief, the Franchisee Defendant was required to purchase insurance on behalf of one or more Texas entities (the G6 Defendants);

(k) upon information and belief, reservation information for rooms at the subject motels passed through a system operated and managed by G6 from its principal place of business in Texas;

(l) upon information and belief, payment information for rooms at the subject motels passed through a system operated and managed by Franchisor in Texas;

(m) on information and belief, the benefit that the Franchisee Defendant received from room rentals was governed by the Texas franchising agreement;

(n) on information and belief, the Franchisee Defendant agreed to make all payments due under the franchising agreement at the G6 principal place of business in the Eastern District of Texas;

(o) the day-to-day operations of the subject motels were dictated, controlled, and influenced by many policies set and enforced by the G6 Defendants from their principal place of business in Carrollton, Texas;

(p) on information and belief, the Franchisee Defendant signed a software licensing agreement with the G6 Defendants for the property management software the G6 Defendants required the Franchisee Defendant to use when operating the subject motels, including, but not limited to, when booking rooms at the hotel and processing payment for those rooms; and

(q) on information and belief, the Franchisee Defendant agreed to file any lawsuit arising from the licensing agreement in the Eastern District of Texas and waived personal jurisdiction and venue objections.

## FACTS

## I. Plaintiff Was a Minor Victim of Unlawful Sex Trafficking at the Subject Hotel Owned, Operated, Managed, and Controlled by Defendants.

20. From in or about January 2024 through in or about June 2024, Plaintiff, then seventeen years old, was trafficked at the Subject Hotel by her trafficker. Plaintiff was caused to engage in commercial sex acts at the Subject Hotel while under the age of eighteen.

21. At the time her trafficking began, Plaintiff was a minor in foster care who had run away from her foster placement. Her trafficker targeted and exploited her youth, her lack of any parent or guardian, and her resulting vulnerability.

22. Plaintiff was trafficked by her trafficker, an adult male individual known to Plaintiff as "Kevin," who operated a commercial sex trafficking enterprise at the Subject Hotel.

23. The rooms used for the trafficking of Plaintiff were rented by the trafficker, or those acting at his direction, on a short-term, recurring basis, and were paid for in cash. At times, the trafficker sent Plaintiff — a visibly underage girl — alone to the front desk of the Subject Hotel to pay cash for rooms, placing Plaintiff face-to-face with front desk staff of the Subject Hotel.

24. Because Plaintiff was under the age of eighteen, no showing of force, fraud, or coercion is required to establish that she was a victim of sex trafficking under 18 U.S.C. § 1591. Nevertheless, the trafficker did in fact use force, coercion, and control against Plaintiff, including by physically assaulting her — leaving a visible black eye and visible scratches on her face — and by supplying her with controlled substances, including counterfeit oxycodone "M30" pills, and alcohol, notwithstanding that she was a minor.

25. Plaintiff was advertised by her trafficker for commercial sex acts online, including on MegaPersonals and ListCrawler, upon information and belief using internet/Wi-Fi services available at the Subject Hotel.

26. In addition, at the direction of her trafficker — who instructed her to "go stand outside" — Plaintiff was caused to solicit commercial sex in and around the premises of the Subject Hotel, dressed in skimpy, sexually provocative, and revealing clothing, in open and plain view of hotel staff and the public, notwithstanding her visibly underage appearance.

27. Plaintiff was compelled to engage in commercial sex acts with adult sex buyers at the Subject Hotel round the clock.

28. While being trafficked, Plaintiff regularly moved about the premises of the Subject Hotel while visibly intoxicated and impaired by the alcohol and "M30" pills supplied by her trafficker, in open view of hotel staff.

29. Loud noises regularly emanated from the rooms used for the trafficking of Plaintiff, audible to hotel staff and other guests of the Subject Hotel.

30. Housekeeping staff at the Subject Hotel regularly entered and cleaned the rooms used for the trafficking of Plaintiff, and in doing so emptied and replaced room trash that was filled with used condoms.

31. The trafficking of Plaintiff ended in or about June 2024, when an undercover law enforcement officer responded to an online advertisement of Plaintiff on MegaPersonals and booked a commercial sex date with her. The trafficker was arrested and, upon information and belief, incarcerated in connection with his trafficking of Plaintiff.

32. The physical, behavioral, and psychological effects of sex trafficking on its victims — and on minor victims in particular — are well-recognized in the hospitality industry. These effects were obvious and apparent to the staff and management of the Subject Hotel including effects on Plaintiff's visibly underage appearance, her demeanor, her intoxication and impairment, her movements throughout the hotel, her visible injuries — including a black eye and scratches on her

face — and her interactions with her trafficker, hotel staff, and others. Observing these effects provided Defendants with notice that Plaintiff was a minor being continually subjected to commercial sexual exploitation, coercion, and control.

## II. Sex Trafficking in the Hotel Industry Is a Well-Known and Pervasive Problem.

33. The widely known and pervasive relationship between sex trafficking and the hotel industry necessarily shapes what the G6 Defendants and the Franchisee Defendant knew or should have known regarding the trafficking at the Subject Hotel, including the trafficking of Plaintiff.

34. Sex slavery is pervasive in the United States, and hotels are the primary place where it happens. For years, sex traffickers have been able to reap their profits with little risk when operating within hotels. In 2014, 92% of calls received by the National Human Trafficking Hotline involved reports of sex trafficking taking place at hotels.

35. The trafficking of minors for commercial sex in hotels is a particular and well-documented feature of this problem. The hospitality industry, including Defendants, has long been on notice that children — including runaway and foster youth, who are targeted by traffickers precisely because of their vulnerability — are sold for sex in budget hotels and motels.

36. Because of this link between hotels and sex trafficking, government agencies and non-profits have devoted significant efforts to educating the hotel industry, including Defendants, on best practices for identifying and responding to sex trafficking.

37. The signs of sex trafficking in a hotel environment — and the signs of minor sex trafficking in particular — follow well-established patterns and can easily be detected by appropriately trained staff.

38. Toolkits specific to the hotel industry have been developed which help hotel staff in every position identify and respond to signs of sex trafficking. From check-in to check-out, there are

indicators that traffickers and their victims routinely exhibit during their stay at a hotel. These include, among others, the presence of an unaccompanied, school-aged minor residing at a hotel; a minor whose room is booked and paid for in cash by an unrelated adult; and a minor exhibiting signs of physical abuse, impairment, or commercial sexual activity.

39. The relationship between a pimp and a prostitute is inherently coercive, and the United States Department of Justice and other agencies and organizations have recognized that most individuals involved in prostitution are subject to force, fraud, or coercion — and that any minor engaged in commercial sex is, as a matter of federal law, a victim of sex trafficking. Defendants understood the practical and legal association between commercial sex and sex trafficking in a hotel environment. Thus, Defendants knew or should have known that signs of commercial sex activity involving a minor in their hotels were in fact signs of sex trafficking.

40. All Defendants were aware or should have been aware of these signs of sex trafficking when operating, controlling, and managing the Subject Hotel, when enacting and enforcing policies and procedures applicable to the Subject Hotel and when training, educating, and supervising the staff of the Subject Hotel.

41. The most effective weapon against sexual exploitation and human trafficking is education and training. The hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity. Hotel employees who have undergone training are more aware of trafficking when it happens and are more willing to report it than those who have not been trained. If hotel companies do nothing to raise awareness or to prevent trafficking, they risk becoming an indirect and unintentional conduit for the abuse that takes place.

42. Given the prevalence of human trafficking in hotels and the abundance of information about how franchisors, owners, operators and hotel employees can identify and respond to this

trafficking, it has become apparent that the decision of a hotel chain to continue generating revenue from traffickers without taking reasonable steps to identify and prevent trafficking in its hotels is a decision to continue generating revenue while failing to take reasonable steps to identify and prevent sex trafficking.

43. Each of the Defendants had a responsibility to adopt, implement, and adequately enforce policies to avoid facilitating sex trafficking and to train hotel staff to identify and respond to the signs of sex trafficking, including the trafficking of minors.

## III. Sex Trafficking Has Long Been Prevalent at G6 Branded Properties, and Defendants Have Known About It.

44. Defendants have long been on notice of the pervasive problem of sex trafficking in the hotel industry. On information and belief, each of the Defendants has also long been on notice of sex trafficking occurring at Motel 6 properties including the Subject Hotel.

45. G6 branded properties include both Motel 6 and Studio 6 properties.

46. Use of G6 branded properties for sex trafficking is well known to the G6 Defendants. Motel 6 hotels are one of the five chains most frequently identified as a site of sex trafficking in federal criminal complaints.

47. A Los Angeles Motel 6 became such a hub for human trafficking and other criminal activity that the G6 Defendants paid to settle a public nuisance lawsuit filed by the City of Los Angeles. G6 Defendants knew staff at its branded properties were facilitating sex trafficking and that it was generating revenue through policies that encouraged sex traffickers to operate at G6 brand properties.

48. The settlement required the G6 Defendants to change policies that were facilitating sex trafficking. Based on information and belief, G6 has failed to adequately implement and enforce such changes.

49. Motel 6 properties are frequently located near major roadways and interstate highways, making them attractive venues for trafficking and compelled prostitution. The Subject Hotel is itself located on the North Blackstone Avenue corridor in Fresno, California, in close proximity to State Route 41 (the Yosemite Freeway), a major highway corridor through California's Central Valley.

50. Numerous publicized incidents demonstrate the use of G6 branded hotels for sex trafficking — including the sex trafficking of minors — and establish that Defendants knew, or should have known, of the use of G6 branded hotels for sex trafficking. Among notable incidents involving the use of Motel and Studio 6 hotels for sex trafficking: in late 2003, a trafficker operated a sex trafficking venture at a Motel 6 in Connecticut; in April 2009, a sex trafficking venture operated out of a Motel 6 in Toledo, Ohio; in approximately September 2011, sex traffickers sold minors for sex at a Motel 6 in Toledo, Ohio; from approximately 2012 through October 2014, two men engaged in criminal sex trafficking of children at a Motel 6 in Harvey, Illinois; in December 2012, the FBI investigated human trafficking at a Motel 6 in Madison, Alabama; in December 2012, the Orange County Human Trafficking Task Force busted a criminal enterprise selling women for sex out of a Motel 6 in Anaheim, California; in March 2014, a trafficker was charged with selling a seventeen year old girl for sex at a Motel 6 in Roseville, Minnesota; in March 2015, a seventeen year old girl was rescued from a Motel 6 in North Charleston, South Carolina by DHS special agents after being sold for sex, beaten, and starved; in March 2015, two men were arrested for sex trafficking a fifteen year old girl at a Motel 6 in Austin, Texas; over a fourteen month period ending in approximately April 2015, a Motel 6 in Warwick, Rhode Island had seventy-five arrests for

crimes including sex trafficking; and in June 2015, a married couple was indicted for sex trafficking minor children out of a Motel 6 in Everett, Washington.

## IV. Defendants had actual and constructive knowledge of widespread and ongoing sex trafficking at the Subject Hotel.

51. The G6 Defendants were specifically aware that sex trafficking was widespread, in general, and knew, or should have known that same was occurring at the Subject Hotel during and prior to the time that Plaintiff was trafficked there.

52. Upon information and belief, Defendants knew or should have known about the widespread trafficking at the Subject Hotel based on:

(a) the obligation of hotel staff and hotel management to report suspected criminal activity including sex trafficking to the G6 Defendants;

(b) law enforcement activity at and concerning the Subject Hotel, including the undercover law enforcement operation in or about June 2024 that responded to an online advertisement of Plaintiff and resulted in the arrest of Plaintiff's trafficker;

(c) the fact that hotel staff observed the obvious signs of the trafficking of Plaintiff, including her visibly underage appearance and her visible injuries; and

(d) other sources of information available to Defendants.

53. All knowledge from the staff at the Subject Hotel is imputed to G6.

## V. Defendants knew Plaintiff, a minor, was being trafficked at the Subject Hotel because of the obvious signs of her trafficking.

54. During the period that Plaintiff was trafficked at the Subject Hotel, there were signs obvious to hotel staff and management that she was a minor being trafficked, including:

(a) A visibly underage girl on the premises of the Subject Hotel during the subject trafficking period, at all hours — including during school hours — unaccompanied by any parent or guardian, in the company of an unrelated adult male;

(b) The rooms used for the trafficking were rented by the trafficker, or those acting at his direction, on a repetitive and recurring basis, and were paid for in cash;

(c) The trafficker at times sent Plaintiff — a visibly underage girl — alone to the front desk to pay cash for the rooms, placing her face-to-face with front desk staff;

(d) Steady foot traffic of adult male sex buyers to and from the rooms rented for the trafficking of Plaintiff;

(e) At the direction of her trafficker, Plaintiff openly solicited commercial sex in and around the premises of the Subject Hotel, dressed in skimpy, sexually provocative, and revealing clothing, in open and plain view of hotel staff and the public;

(f) Plaintiff was regularly seen by hotel staff in and about the Subject Hotel with visible injuries, including a black eye and scratches on her face;

(g) Plaintiff — a visibly underage girl — regularly moved about the premises of the Subject Hotel visibly intoxicated and impaired;

(h) Loud noises emanating from the rooms used for the trafficking, audible to hotel staff and other guests;

(i) Housekeeping staff entered and cleaned the rooms used for the trafficking and, in doing so, regularly emptied and replaced room trash filled with used condoms — in rooms occupied by a visibly underage girl;

(j) Plaintiff was advertised by her trafficker for commercial sex acts online, including on MegaPersonals and ListCrawler, upon information and belief using internet/Wi-Fi available at the Subject Hotel;

(k) Upon information and belief, hotel staff observed the foregoing red flags, yet took no action to stop the trafficking, report it, or intervene; and

(l) Other commonly known sex trafficking red flags which Defendants knew or should have known of had anti-trafficking measures been timely and properly implemented at the hotel.

55. Hotel staff and management observed, or should have observed, the foregoing obvious signs of sex trafficking including items set forth in the preceding paragraph.

56. When being trafficked at the Subject Hotel from in or about January 2024 through in or about June 2024, Plaintiff was aware that staff of the Subject Hotel observed Plaintiff, her trafficker, as well as a frequent procession of sex buyers going in and out of the subject rented rooms, contemporaneous with other signs and indicators of trafficking occurring on the subject premises.

57. Plaintiff knows that some of the individuals that witnessed and observed red flags indicative of sex trafficking were staff members in that the staff were readily identifiable to Plaintiff either by her knowing of the individual and/or by means of the staff wardrobe/nametag/hotel logo and/or by means of a staff member being in an employee restricted area and/or by means of a staff member being stationed at the front desk of the Subject Hotel. In particular, Plaintiff interacted face-to-face with front desk staff when sent to pay cash for the rooms.

58. Based upon information and belief, multiple employees at the Subject Hotel, including management-level employees and front desk and housekeeping staff, observed, or were made

aware of these obvious signs of trafficking while acting within the scope and course of their employment.

59. Because Plaintiff was repeatedly and recurringly present at, moved openly about, solicited at, and transacted at the front desk of the Subject Hotel over a period of months, the staff and management of the Subject Hotel had a reasonable opportunity to observe Plaintiff within the meaning of 18 U.S.C. § 1591(c). Defendants therefore knew, recklessly disregarded, or had a reasonable opportunity to observe the fact that Plaintiff was under the age of eighteen.

60. As such, Defendants knew or should have known that Plaintiff, a minor, was being trafficked at the Subject Hotel.

61. The foregoing red flags were not merely indicators of commercial sex activity but were indicators of sex trafficking specifically — and of minor sex trafficking in particular — because they included the presence of a visibly underage, unaccompanied girl engaged in open commercial sexual activity while bearing visible injuries and while visibly impaired, whose rooms were booked and paid for in cash by an unrelated adult. Any commercial sex act involving a minor is sex trafficking as a matter of federal law. These signs, individually and collectively, provided Defendants with notice not only of sex trafficking activity generally at the Subject Hotel, but specifically that Plaintiff, a minor, was being trafficked.

## VI. Defendants actively facilitated sex trafficking at the Subject Hotel, including the trafficking of Plaintiff.

62. Defendants had both actual and constructive knowledge of the trafficking of Plaintiff at the Subject Hotel because the trafficking was, in part, a consequence of Defendants facilitating her trafficking at the Subject Hotel.

63. The rooms used for the trafficking of Plaintiff were rented and/or renewed by the trafficker, or those acting at his direction, on a repeated, recurring basis, paid for in cash, from in or about January 2024 through in or about June 2024.

64. Defendants rented rooms to individuals they knew or should have known were engaged in sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

65. The Franchisee Defendant, through its staff, rented rooms used for the trafficking of Plaintiff, collected cash payment for those rooms — including directly from Plaintiff, a visibly underage girl — and interacted face-to-face with Plaintiff and her trafficker on a regular and repeated basis. These were not passive observations of trafficking from a distance; the Franchisee Defendant was involved in the commercial transactions that provided the venue for the trafficking of Plaintiff.

66. Defendants knowingly benefited from the sex trafficking of Plaintiff at the Subject Hotel by receiving payment for the rooms rented that were used for sex trafficking, including as to the Plaintiff, in violation of the TVPRA from in or about January 2024 through in or about June 2024.

67. The rooms at the Subject Hotel that were used for the sex trafficking of the Plaintiff were rented by the trafficker, or those acting at his direction. Discovery will reveal additional facts concerning the manner in which the trafficker and those acting at his direction booked rooms at the Subject Hotel that were used for the sex trafficking of the Plaintiff in violation of the TVPRA:

(a) the identity and name under which each room was booked or renewed;

(b) whether staff of Defendants required for each booking that the renter show their identification; and

(c) whether staff of Defendants required identification from Plaintiff, a minor, when accepting cash payment from her for rooms.

68. Defendants allowed the trafficker and those acting at his direction on the subject premises to continue to pay for rooms rented at the Subject Hotel during the time that Plaintiff was being sex trafficked there in violation of the TVPRA.

69. Despite having actual or constructive knowledge of widespread and ongoing sex trafficking in general and, on information and belief, at the Subject Hotel, the Franchisee Defendant continued renting rooms used to sexually exploit Plaintiff.

70. The Franchisee Defendant knew or should have known that Plaintiff, a minor, was being trafficked and, despite this, benefited from continued association with her trafficker by providing a venue for her exploitation.

71. The Franchisee Defendant also facilitated trafficking at the Subject Hotel, including the trafficking of Plaintiff, in ways including:

(a) allowing inappropriate and inadequate practices for hiring, training, supervising, managing, and disciplining front-line staff regarding issues related to human trafficking, including the trafficking of minors;

(b) inadequate and inadequately enforced sex trafficking notice and training for hotel staff;

(c) accepting cash payment for rooms from an unaccompanied minor without inquiry, identification, or intervention;

(d) choosing not to report known or suspected criminal activity including sex trafficking according to reasonable practices, industry standards, and/or applicable franchisor policies and procedures, notwithstanding the obvious red flags of the trafficking of Plaintiff observable to staff; and

(e) creating an environment where the trafficker did not need to incur the burden of taking significant steps to conceal his activities but, instead, could operate openly — including directing a minor to solicit on the premises and sending her to the front desk to pay cash — without concern for detection or interference by the hotel staff.

72. Upon information and belief, the G6 Defendants participated directly in aspects of the operation of the Subject Hotel that influenced whether and to what extent trafficking occurred at the hotel, including but not limited to the trafficking of Plaintiff.

73. Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the Subject Hotel, G6 continued renting rooms used to sexually exploit victims, including Plaintiff.

74. G6 knew or should have known that Plaintiff was being trafficked and, despite this, benefited from continued association with her trafficker by providing hotel rooms and related services used for her exploitation.

75. Upon information and belief, despite having actual or constructive knowledge of the ongoing sex trafficking at the Subject Hotel, the G6 Defendants continued participating in a venture at the Subject Hotel, with the Franchisee Defendant and hotel staff, in a way that they knew or should have known would lead to additional sex trafficking, including but not limited to by the following:

(a) the G6 Defendants adopted inappropriate and inadequate practices for selecting, training, supervising, managing, and disciplining franchisees, operators, and hotel staff regarding issues related to human trafficking;

(b) the G6 Defendants provided inadequate training on issues related to human trafficking and unreasonably delayed providing training;

(c) the G6 Defendants adopted a safety and security budget and safety and security practices that were clearly insufficient considering the known problem of sex trafficking at Motel 6 properties;

(d) the G6 Defendants failed to ensure that franchisees, operators, and hotel staff reported or responded to criminal activity including sex trafficking appropriately;

(e) the G6 Defendants continued to use policies, protocols, and practices that had been shown to lead to widespread trafficking at G6 branded properties, including the Subject Hotel;

(f) the G6 Defendants attracted traffickers by maintaining venues where access was easy, risks of interference were low, and traceability was minimal;

(g) the G6 Defendants allowed traffickers to reserve and pay for rooms using cash, on a day-by-day basis, which provided relative anonymity and non-traceability; and

(h) the G6 Defendants provided traffickers with access to internet services in a manner that the G6 Defendants knew or should have known would be used to facilitate trafficking by promoting commercial sex services online.

76. If G6 had exercised reasonable diligence when operating the Subject Hotel and in the areas where it retained control, G6 would have prevented the Subject Hotel from being used to facilitate widespread and ongoing sex trafficking, including the trafficking of Plaintiff. Instead, G6 engaged in a course of conduct that facilitated widespread and ongoing sex trafficking, including the trafficking of Plaintiff.

## VII. Defendants knowingly benefited from participation in a venture that they knew or should have known was engaged in sex trafficking.

77. Through the conduct described above, Defendants knowingly benefited from engaging in a venture with the trafficker and with one another.

78. The repeated cash rental transactions between the trafficker (and those acting at his direction) and the Subject Hotel which occurred during the time that Plaintiff was trafficked were colored by overt indicators of minor sex trafficking — including Plaintiff's visibly underage and unaccompanied presence over a period of months, her visible black eye and facial scratches, her visible intoxication and impairment, her open solicitation on the premises, the steady foot traffic of adult male sex buyers, loud noises emanating from the rooms within earshot of staff, and room trash filled with used condoms regularly removed by housekeeping — such that said Defendants knew, or should have known, that they were renting rooms to, and facilitating, individuals engaged in the sex trafficking of a minor, and of Plaintiff in particular, in violation of the TVPRA. This continuous business relationship gives rise to the inference of a tacit agreement between the trafficker and the Subject Hotel notwithstanding that the trafficker was engaged in sex trafficking.

79. A venture existed between the trafficker and the Franchisee Defendant at the subject premises by means of rooms repeatedly rented for the trafficking, which rooms Defendants knew, or should have known, were being used for the sex trafficking of Plaintiff in violation of the TVPRA, and which the parties wished to continue for profit.

80. A venture also existed between the Franchisee Defendant and the G6 Defendants pursuant to which the Subject Hotel was operated, branded, and controlled.

81. Relative to the Subject Hotel, a continuous business relationship existed between the Franchisee Defendant and the trafficker's sex trafficking business, in part, in that said Defendant provided assistance, support, or facilitation to the trafficker and individuals it knew or should have

known were involved in sex trafficking on the premises, in violation of the TVPRA, including as to the Plaintiff herein; and in doing so facilitated the trafficking venture's success.

82. Relative to the Subject Hotel, a continuous business relationship existed between the G6 Defendants and the trafficker's sex trafficking business, in part, in that said Defendants provided assistance, support, or facilitation to the trafficker and individuals they knew or should have known were involved in sex trafficking on the premises in violation of the TVPRA, including as to the Plaintiff herein; and in doing so facilitated the trafficking venture's success.

83. Through the conduct described above, each Defendant also knowingly benefited from engaging in a commercial venture with other Defendants operating the Subject Hotel. Defendants associated with one another and with the hotel staff to operate the Subject Hotel. Each Defendant received financial benefits from operating the Subject Hotel, including revenue generated specifically by renting rooms used for the trafficking. They engaged in revenue sharing and had a common incentive to maximize revenue. By participating in a venture that facilitated sex trafficking, Defendants also benefitted by keeping operating costs low and maintaining the loyalty of the segment of their customer base that seeks to participate in the sex trade.

**VIII. The Operators and Staff of the Subject Hotel Acted as Actual Agents of G6.**

84. G6 is vicariously liable for the acts, omissions, and knowledge of the Franchisee Defendant and the staff of the Subject Hotel.

85. The G6 Defendants subjected the Franchisee Defendant to detailed standards and requirements regarding the operation of the Subject Hotel through the franchising agreements, through detailed written policies and manuals, and through other formal and informal protocols, directives, mandates, and expectations imposed by the G6 Defendants.

86. The G6 Defendants obscure the full extent of control they exercise over their franchisees by treating the manuals and certain policies as confidential and proprietary and prohibiting any public disclosure of those policies and manuals. Upon information and belief, the standards that the G6 Defendants imposed on the Franchisee Defendant:

(a) did not merely identify quality or outcome standards but instead specifically controlled the means, methods, and tools used at the Subject Hotel;

(b) covered virtually all aspects of hotel operations, including internal operating functions;

(c) dictated the specific manner in which the operators and hotel staff must carry out most day-to-day functions at the Subject Hotel; and

(d) significantly exceeded what was necessary for G6 to protect its registered trademarks.

87. In addition to the foregoing, upon information and belief, G6 exercised and reserved the right to exercise control over the day-to-day operation of the Subject Hotel, including:

(a) requiring operators and management to participate in mandatory training programs covering all aspects of hotel operations;

(b) controlling training content and methods for hotel staff;

(c) designating approved vendors and prohibiting purchases from non-approved sources;

(d) requiring use of specific technology, hardware, software, and property management systems;

(e) setting required staffing levels;

(f) establishing detailed job descriptions and dictating which positions must perform which tasks;

(g) setting requirements for hiring, overseeing discipline, and termination decisions;

(h) controlling channels for guest complaints and directly participating in responses;

(i) generating reports and analysis of guest complaints and online reviews;

(j) requiring use of a Guest Relations Application owned and operated by G6;

(k) regularly auditing books and records;

(l) conducting frequent and unscheduled inspections;

(m) retaining the right to issue fines, require corrective action plans, and terminate franchising agreements;

(n) controlling all marketing and prohibiting unauthorized online presence; and

(o) imposing detailed recordkeeping and reporting requirements regarding virtually all aspects of hotel operations.

88. Upon information and belief, the G6 Defendants participated directly in aspects of the operation of the Subject Hotel that influenced whether and to what extent trafficking occurred, including:

(a) publicly assuming responsibility and control over the human trafficking response of all Motel 6 and Studio 6 properties;

(b) retaining control over when branded hotels would share information with law enforcement;

(c) creating a reporting hotline for hotel staff and franchisees to report suspected human trafficking and determining when issues should be escalated;

(d) retaining control over determining which hotels needed additional training based on high risk of trafficking;

(e) retaining control to terminate staff or franchising agreements based on the response to human trafficking;

(f) retaining control over all training on how to spot and prevent human trafficking;

(g) maintaining a Safety & Security Team and Critical Incident Rapid Response Team for investigating potential criminal incidents;

(h) adopting, enforcing, and monitoring policies and codes of conduct related to human trafficking; and

(i) maintaining control over internet services at the Subject Hotel, including whether sites used to solicit sex trafficking victims would be accessible.

89. G6 directly participated in and retained day-to-day control over renting rooms at the Subject Hotel by, among other things:

(a) controlling all details of the guest reservation, check-in, and payment processes;

(b) directly making reservations and accepting payment through a central reservation system without requiring franchisee approval;

(c) establishing and maintaining a brand-wide guest rewards and loyalty program;

(d) controlling room rates, required discounts, mandatory fees, and rewards programs;

(e) controlling and restricting the ability of operators and staff to refuse or cancel a reservation;

(f) controlling policies and procedures regarding check-in, payment and identity verification;

(g) collecting, retaining, monitoring, and analyzing detailed data about every guest; and

(h) exercising and retaining the right to exercise control over virtually all aspects of room reservations and payment.

## IX. G6 Defendants are jointly responsible for the trafficking of Plaintiff.

90. All the G6 Defendants were participants in a joint venture, which involved a common enterprise, profit-sharing, a community of interests, and joint rights of control and management, and are vicariously liable for the violations of the other participants in the joint venture.

91. Upon information and belief, operation of the Subject Hotel was part of a single unified operation by G6 Defendants. Upon information and belief, all G6 Defendants shared a common parent company, were subject to joint control, and operated as an integrated enterprise and/or as alter-egos.

## X. Causation.

92. The venture or ventures in which each Defendant participated were direct, producing, and proximate causes of the injuries and damages to Plaintiff.

93. Under the TVPRA, Defendants are jointly and severally liable for all damages that a jury awards to Plaintiff for past and future losses she suffered as a proximate result of her sexual exploitation and trafficking.

## XI. Timeliness.

94. This action is timely. Plaintiff was trafficked from in or about January 2024 through in or about June 2024, well within the ten-year limitations period of 18 U.S.C. § 1595(c)(1). In addition,

because Plaintiff was a minor at the time of the violations, this action is timely under 18 U.S.C. § 1595(c)(2), which permits suit within ten years after the victim reaches eighteen years of age.

## CAUSES OF ACTION

95. Plaintiff incorporates all other allegations.

**COUNT I. Cause of Action: Beneficiary Liability under § 1595(a) of the TVPRA (all Defendants)**

96. Plaintiff is a victim of sex trafficking within the meaning of 18 U.S.C. §§ 1591 and 1595(a) and is entitled to bring a civil action against anyone who knowingly benefited from participation in a venture that the person knew or should have, with reasonable diligence, known was engaged in a violation of the TVPRA. Because Plaintiff was under the age of eighteen at all relevant times, any commercial sex act in which she was caused to engage constituted sex trafficking under 18 U.S.C. § 1591 without regard to force, fraud, or coercion.

97. Through acts and omissions, and participation, described throughout this Complaint, Defendants received a financial benefit from participating in a venture with traffickers, including Plaintiff's trafficker, even though Defendants knew or should have known that this trafficker was engaged in violations of 18 U.S.C. § 1591(a)(1) and 18 U.S.C. § 1591(a)(2). Thus, Defendants are liable as a beneficiary under 18 U.S.C. § 1595(a).

98. Through the acts and omissions described throughout this Complaint, the G6 Defendants received a financial benefit from participating in a venture with the Franchisee Defendant regarding the operations of the Subject Hotel even though the G6 Defendants knew or should have known that this venture was violating 18 U.S.C. §§ 1591(a) and 1595(a).

99. Defendants' participation in these ventures combined with the trafficker's conduct, and the other unlawful acts and omissions alleged in this Complaint, to cause Plaintiff to suffer substantial

physical and psychological injuries and other damages because of being trafficked at the Subject Hotel.

**COUNT II. Cause of Action: Vicarious Liability for TVPRA Violations (G6 Defendants)**

100. Under the TVPRA and the federal common law, each member of a joint venture is vicariously liable for the acts and omissions of all other members of that joint venture.

101. Under the TVPRA and the federal common law, an entity is vicariously liable for the acts and omissions of its alter-egos.

102. The Franchisee Defendant acted as the actual agent of the G6 Defendants when operating the Subject Hotel.

103. Through the acts and omissions described throughout this Complaint, the G6 Defendants exercised or retained the right to exercise systematic and day-to-day control over the means and methods used to operate the Subject Hotel.

104. The G6 Defendants are vicariously liable for the TVPRA violations of the Franchisee Defendant and the subagents thereof.

## DAMAGES

105. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer substantial damages.

106. Defendants are jointly and severally liable for all past and future damages sustained by Plaintiff.

107. Defendants' failure to timely and properly prevent the sex trafficking or timely intervene regarding same was a proximate cause of the injuries and damages sustained by Plaintiff in this case including, but not limited to, being the victim of sex trafficking as a minor at the Subject Hotel and suffering personal injury and the trauma physically and mentally of being caused, as a child, to

engage in commercial sex with numerous adult sex buyers while being trafficked, being physically assaulted by her trafficker — including suffering a visible black eye and scratches to her face — being supplied with and impaired by controlled substances and alcohol as a minor, and being caused to solicit commercial sex in public as a child, as well as all residual injuries suffered, including PTSD.

108. Plaintiff being sex trafficked as a minor at the Subject Hotel was a proximate cause, competent cause, and substantial factor in causing her severe and permanent injuries including but not limited to personal injuries including the horror of being a child victim of sex trafficking as well as significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked. This trauma led to depression, anxiety disorders, and PTSD, which in turn affects daily functioning.

109. As a direct and proximate result of Defendants' failure to act, mandate, establish, and execute anti-trafficking measures and modify their anti-trafficking efforts at the Subject Hotel, Plaintiff was sex trafficked, sexually exploited, and victimized repeatedly while a minor.

110. As a consequence of being sex trafficked at the Subject Hotel, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, and psychological injuries as the result of being trafficked and sexually exploited at the Subject Hotel in violation of 18 U.S.C. § 1591.

111. Plaintiff is entitled to be compensated for personal injuries and economic damages, including:

(a) Actual damages (until trial and in the future);

(b) Incidental and consequential damages (until trial and in the future);

(c) Mental anguish and emotional distress damages (until trial and in the future);

(d) Lost earnings and lost earning capacity (until trial and in the future);

(e) Necessary medical expenses (until trial and in the future);

(f) Life care expenses (until trial and in the future);

(g) Physical pain and suffering (until trial and in the future);

(h) Physical impairment (until trial and in the future);

(i) Exemplary/Punitive damages;

(j) Attorneys' fees as allowed by law;

(k) Costs of this action; and

(l) Pre-judgment and all other interest recoverable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as identified in the above-referenced Counts and as follows:

(a) All available compensatory damages for the described losses with respect to the above causes of action;

(b) Past and future emotional distress;

(c) Consequential and/or special damages;

(d) All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

(e) Physical pain and suffering;

(f) Disgorgement of profits obtained through unjust enrichment;

(g) Restitution;

(h) All damages allowable under the TVPRA;

(i) Attorneys' fees as allowed by law;

(j) Punitive damages with respect to each cause of action;

(k) Costs of this action;

(l) Prejudgment and all other interest recoverable; and

(m) Such other and further relief to which Plaintiff may, in law or in equity, show herself to be justly entitled.

**DEMAND FOR JURY TRIAL**

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: July 10, 2026

Respectfully submitted,

/s/ Jason Byrd
Jason Byrd
**THE BYRD LAW FIRM**
448 Orleans
Beaumont, TX 77701
Telephone: (409) 924-0660
Facsimile: (409) 924-0035
jason@txbyrd.com

Randolph Janis, Esq.
**DOUGLAS & LONDON, P.C.**
One State Street, 35th Floor
New York, NY 10004
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
rjanis@douglasandlondon.com

Chloe Makowsky, Esq.
**DOUGLAS & LONDON, P.C.**
One State Street, 35th Floor
New York, NY 10004
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
cmakowsky@douglasandlondon.com

*Attorneys for Plaintiff*